O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICKI HUFF, on behalf of herself and all others similarly situated,<br><br>                    Plaintiff,<br><br>     v.<br><br>LIBERTY LEAGUE INTERNATIONAL, LLC, an Arizona Corporation; BEYOND FREEDOM PUBLISHING, LLC, an Arizona Corporation; BRENT PAYNE; SHANE KRIDER; LIBERTY LEAGUE HOLDINGS, LLC, an Arizona Corporation, formerly known as BIG ASS BRITCHES HOLDINGS, LLC, an Arizona Corporation; and Does 1-100, inclusive,<br><br>                    Defendants. | Case No. EDCV 08-1010-VAP (SSx)<br><br>**[Motion filed on January 26, 2009]**<br><br>**ORDER GRANTING (1) MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, (2) MOTION TO COMPEL ARBITRATION, (3) MOTION TO DISMISS, AND DENYING MOTION TO STRIKE** |

     Defendants' (1) Motion to Dismiss for Lack of

Personal Jurisdiction, (2) Motion to Compel Arbitration,

(3) Motion to Dismiss for Failure to State a Claim, and

(4) Motion to Strike certain allegations in Plaintiff's

1  Complaint came before the Court for hearing on April 6,

2  2009.  After reviewing and considering all papers filed

3  in support of, and in opposition to, the Motion, as well

4  as the arguments advanced by counsel at the hearing, the

5  Court GRANTS the Motion to Dismiss for Lack of Personal

6  Jurisdiction, GRANTS the Motion to Compel Arbitration,

7  GRANTS the Motion to Dismiss for failure to state a

8  claim, and DENIES the Motion to Strike certain

9  allegations in Plaintiff's Complaint.

10

11                      **I. BACKGROUND**

12  **A.   Factual Allegations**

13       On August 15, 2006, Plaintiff Vicki Huff purchased a

14  Liberty League Starter Kit and Beyond Freedom Home Study

15  Course from the Liberty League Internet website,

16  http://libertyleague.com.  (FAC ¶¶ 60, 62.)  Before

17  purchasing those products, Plaintiff was required to

18  complete an online "Associate Application Agreement" that

19  required assent to certain terms and conditions.

20  (Boisnier Decl. ¶¶ 4, 10.)  Plaintiff subsequently

21  purchased certain products and tickets to attend Liberty

22  League conferences, which required assent to identical

23  terms and conditions to which Plaintiff assented

24  previously.  (FAC ¶¶ 64, 65.)

25

26

27

28

1    Plaintiff alleges she spent over $30,000 on Liberty
2 League products and conferences.  (FAC ¶ 69.)  According
3 to Plaintiff, Liberty League engages in a multi-level
4 marketing scheme similar to a pyramid scheme; Liberty
5 League employees fraudulently misled Plaintiff into
6 purchasing Liberty League products and services and
7 tricked her into believing she would earn lucrative
8 income and attain financial freedom.  (Id. at 20.)
9
10 **B.  Procedural History**
11    On July 25, 2008, Plaintiffs Vicki Huff, Sarah
12 McDowell, and Lynne Milsom, filed a lawsuit in this Court
13 against Defendants Liberty League International, LLC,
14 Beyond Freedom Publishing, LLC, Brent Payne, Julie Payne,
15 Shane Krider, Michelle Krider, and Liberty League
16 Holdings, LLC alleging the following claims: (1)
17 violation of RICO, through transporting and receiving
18 stolen money, 18 U.S.C. § 1962(c)-(d); (2) violation of
19 RICO through mail and wire fraud, 18 U.S.C. § 1962(c)-
20 (d); (3) violation of consumer protection statutes; (4)
21 violation of state and federal anti-pyramid statutes; and
22 (5) unjust enrichment.
23
24    On October 17, 2008, Defendants filed a "Motion to
25 (1) Compel Arbitration, or in the Alternative to (2)
26 Transfer the Case to the District Court of Arizona, or
27 (3) Dismiss the Complaint for Lack of Personal
28

1   Jurisdiction, or (4) Dismiss the Case for Failure to
2   State a Claim, or (5) For a More Definite Statement."  On
3   December 5, 2008, instead of opposing the Motion,
4   Plaintiff Vicki Huff ("Plaintiff") filed an amended
5   putative class action Complaint ("First Amended
6   Complaint" or "FAC"), which removed Defendants Julie
7   Payne and Michelle Krider and the RICO claims, but added
8   claims that Defendants violated California Business and
9   Professions Code Sections 17200 and 17500.[1]

10

11      On January 26, 2009, Defendants filed a "Motion to:
12   (1) Compel Arbitration; (2) Dismiss the Case for Failure
13   to State a Claim (or Alternatively to Require a More
14   Definite Statement); (3) Dismiss or Strike Claim for
15   Injunctive Relief and Strike Irrelevant Allegations; and
16   (4) Dismiss the Complaint for Lack of Personal
17   Jurisdiction," the Declaration of Cathy Flanagan
18   ("Flanagan Declaration"), the Declaration of Nadine
19   Boisnier ("Boisnier Declaration"), and the Declaration of
20   David R. Burtt ("Burtt Declaration").  On March 2, 2009,
21   Plaintiff filed Opposition and the Declaration of
22   Patricia N. Syverson ("Syverson Declaration").  On March
23   23, 2009, Defendants filed a Reply.

24   _____

25      [1] Confusingly, Plaintiff's FAC identifies each
     Defendant as a party under the heading "Parties," but
26   then refers to all Defendants throughout the FAC as
     "Defendants" without alleging which Defendant did what,
27   or how the Defendants interacted or related to one
     another in the context of the purported wrongful scheme.
28

4

1     **II. DISCUSSION**

2  **A.   Motion to Dismiss for Lack of Personal Jurisdiction**

3          Defendants move the Court to dismiss the FAC because

4  the Court lacks personal jurisdiction over Defendants

5  Beyond Freedom Publishing, LLC, Brent Payne, Shane

6  Krider, and Liberty League Holdings, LLC.[2]  (See Mot. at

7  19-23; Reply at 11-14.)

8

9        **1.   Legal Standard**

10         Due process requires that nonresident defendants have

11  certain "minimum contacts" with the forum state so that

12  the exercise of jurisdiction does not offend traditional

13  notions of fair play and substantial justice.  Int'l Shoe

14  v. Washington, 326 U.S. 310 (1945).  "[I]t is essential

15  in each case that there be some act by which the

16  defendant purposefully avails itself of the privilege of

17  conducting activities within the forum State, thus

18  invoking the benefits and protections of its law."

19  Hanson v. Denckla, 357 U.S. 235, 253 (1958).

20

21         A court may exercise personal jurisdiction over a

22  nonresident defendant generally or specifically.  Doe v.

23  Am. Nat'l Red Cross, 112 F.3d 1048, 1050 (9th Cir. 1997).

24  Specific jurisdiction exists when: (1) the defendant

25  _____

26         [2] Contrary to Plaintiff's argument, Defendants do not
    argue the Court lacks jurisdiction over Liberty League
27  International, LLC.  (See Reply at 11.)  Thus, Defendants
    consent to the Court's personal jurisdiction over Liberty
28  League International, LLC.

purposefully avails himself of the "privilege of conducting activities in the forum;" (2) the claims arises "from the defendant's forum-related activities;" and, (3) is reasonable.  See Data Disc, Inc. V. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1287 (9th Cir. 1977). Alternatively, a court has general jurisdiction when the defendant's activities within a state are "substantial" or "continuous and systematic."  Id.

The plaintiff has the burden to establish a court's personal jurisdiction over a defendant.  Cubbage v. Merchent, 744 F.2d 665, 667 (9th Cir. 1984), cert. denied, 470 U.S. 1005 (1985).  The plaintiff need only demonstrate facts that, if true, would support jurisdiction over the defendant.  Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995) (citations omitted); see also AT&T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996) (where trial court rules on jurisdictional issue based on affidavits and discovery materials without holding evidentiary hearing, plaintiff need only make prima facie showing).

### 2.  Discussion

#### a)  Beyond Freedom Publishing, LLC

Plaintiff alleges "Defendant Beyond Freedom Publishing, LLC is an Arizona corporation.  At all relevant times, Beyond Freedom Publishing was in the

1    business of publishing personal development products for

2    Liberty League Int'l."  (FAC at ¶ 15.)  This allegation

3    fails to show any basis for the Court to exercise

4    personal jurisdiction over this Defendant, either

5    generally or specifically.

6

7        Plaintiff does not allege Beyond Freedom Publishing,

8    LLC, has had any contact with California whatsoever, let

9    alone any contacts sufficient to satisfy the Court's

10   jurisdictional requirements.  See Calder v. Jones, 465

11   U.S. 783, 789-90 (1984) ("Each defendant's contacts with

12   the forum State must be assessed individually.")

13   Instead, Plaintiff argues Beyond Freedom Publishing,

14   LLC's alleged association with Liberty League

15   International is sufficient to confer jurisdiction here;

16   this is an inadequate basis.  See Davis v. Metro

17   Productions, Inc., 885 F.2d 515, 520 (9th Cir. 1989) ("a

18   person's mere association with a corporation that causes

19   injury in the forum state is not sufficient in itself to

20   permit that forum to assert jurisdiction over that

21   person").  Accordingly, the Court GRANTS Defendants'

22   Motion on this basis, with leave to amend.

23

24            b)   Brent Payne & Shane Krider

25       Plaintiff alleges Mr. Payne and Mr. Krider "are and

26   were, at all relevant times, co-founders and managers of

27   Defendant Liberty League Int'l.  As such, they directed,

28

                                7

managed and controlled the operations of Defendant Liberty League Int'l.  Payne and Krider are residents of the state of Arizona."  (FAC at ¶ 16.)  Plaintiff also alleges they "are and were, at all relevant times, co-founders and managers for Beyond Freedom Publishing." (Id. at ¶ 15.)

Plaintiff does not meet her burden of showing the Court has personal jurisdiction over these Defendants; there is no allegation that they purposefully availed themselves of conducting business in California, nor that the claims against them arise out of their contact with California, nor any other basis that would show the Court reasonably could exercise either general or specific jurisdiction over these Defendants.  See Calder v. Jones, 465 U.S. at 789-90; Davis v. Metro Productions, Inc., 885 F.2d at 520; Brown v. Gen. Steel Domestic Sales, LLC, 2008 WL 2128057, at *10 (C.D. Cal. 2008) ("The fact that a corporation is subject to jurisdiction in the forum state, however, does not necessarily confer jurisdiction over its individual officers.  Instead, the court must examine the individual's contacts with the forum to determine if they are sufficient to warrant the exercise of jurisdiction over him in connection with forum-related claims.").[3]

---

[3] In her Opposition, Plaintiff argues Mr. Krider and Mr. Payne are the "guiding spirit" or "central figures"
(continued...)

1   Plaintiff does not meet her burden of showing the

2   Court may exercise either specific or general personal

3   jurisdiction over these Defendants.  Accordingly, the

4   Court GRANTS Defendants' Motion on this issue, with leave

5   to amend.

6

7            **c)   Liberty League Holdings, LLC**

8   Plaintiff alleges Liberty League Holdings, LLC is "an

9   Arizona Corporation.  At all relevant times, LL Holdings

10  was a manager of Liberty League Int'l.  As such, it

11  directed, managed and controlled the operations of

12  Defendant Liberty League Int'l."  (FAC at ¶ 17.)  Again,

13  this allegation is insufficient for the Court to

14  determine whether or not it can exercise personal

15  jurisdiction over this Defendant, either generally or

16  specifically.  As discussed above, Plaintiff does not

17  allege any contacts between this Defendant and

18  California.  Without any facts to support the Court's

19  exercise of personal jurisdiction over this Defendant,

20  the Court GRANTS Defendants' Motion on this issue, with

21  leave to amend.

22  _____

23      [3](...continued)

24  in the challenged conduct.  (See Opp'n at 23.)  This
    argument is irrelevant to the question of whether the

25  Court can exercise of personal jurisdiction over these
    Defendants; assuming Plaintiff would seek to allege this

26  in an amended pleading, it would not form any basis for
    exercising jurisdiction over these Defendants, either

27  generally or specifically.  Plaintiff fails to allege
    these Defendants had any contacts with California

28  whatsoever.

### d)   Limited Jurisdictional Discovery

At the hearing, Plaintiff's counsel requested leave to conduct limited jurisdictional discovery, in order to take the depositions of Defendants Brent Payne and Shane Krider to determine the corporate structures of Defendants.  Finding good cause, the Court grants Plaintiff leave to conduct these depositions, limited in scope to questions regarding jurisdiction.  See Terracom v. Valley Nat. Bank, 49 F.3d 555, 562 (9th Cir. 1995). Plaintiff must conduct these depositions no later than May 4, 2009 and file an amended complaint no later than May 26, 2009.

### B.   Motion to Compel Arbitration

Defendants move the Court to compel arbitration of Plaintiff's claims, based on the arbitration clause contained in the parties' contracts.[4]

In the "Associate Application and Agreement Terms and Conditions" contract between Plaintiff and Defendants,

---

[4] On August 15, 2006, Plaintiff purchased a Liberty League start-up kit and agreed to the terms and conditions set forth in Exhibit 1 to the Boisnier Declaration.  (Boisnier Decl. at ¶ 10.)  On September 5, 2006, Plaintiff purchased tickets to a Liberty Conference and she agreed to the terms and conditions set forth in Exhibit 3 to the Boisnier Declaration.  (Id. at ¶ 11.)

1   attached by Defendants as Exhibit 1[5] to the Boisnier

2   Declaration, the arbitration provision reads as follows:

3       "14.   Any dispute or lawsuit relating to or arising

4       out of this Application and Agreement, Company's

5       Rules, Company's Associate Policies and Procedures,

6       or any other disagreement between the parties shall

7       be resolved by binding arbitration in accordance with

8       the Rules of Commercial Arbitration of the American

9       Arbitration Association.   Arbitration shall be held

10      in Maricopa County, State of Arizona.   Judgment upon

11      the award rendered may be entered in any court of

12      competent jurisdiction.   In the event this

13      arbitration provision is declared invalid or

14      unenforceable for any reason by a court of competent

15      jurisdiction, the parties agree that venue and

16      jurisdiction shall be in the courts of the State of

17      Arizona, Maricopa County or applicable Federal

18      courts.   The laws of the State of Arizona govern this

19      Application and Agreement."

20  (See Boisnier Decl., Ex. 1 at ¶ 14.)

21

22      In the "Conference Ticket Purchase Terms and

23  Conditions" contract between Plaintiff and Defendants,

24

25

26

27      ───────────────

        [5] Plaintiff makes no objection to this document's

28  authenticity or accuracy.

                            11

1 attached by Defendants as Exhibit 3[6] to the Boisnier

2 Declaration, the arbitration reads as follows:

3     "12. ARBITRATION; VENUE.  Any controversy, claim,

4     action or lawsuit relating to or arising out of the

5     ticket purchase and these Terms or Conditions, or any

6     other disagreement between the parties shall be

7     resolved by binding arbitration in accordance with

8     the Rules of Commercial Arbitration of the American

9     Arbitration Association.  Arbitration will be held in

10     Maricopa County, State of Arizona.  Judgment upon the

11     award rendered may be entered in any court of

12     competent jurisdiction.  In the event this

13     arbitration provision is declared invalid or

14     unenforceable for any reason by any court of

15     competent jurisdiction, parties agree that venue and

16     jurisdiction shall be in the courts of the State of

17     Arizona, Maricopa County or applicable federal courts

18     serving this jurisdiction.  The laws of the State of

19     Arizona shall govern the ticket purchase and these

20     Terms and Conditions."

21 (See Boisnier Decl., Ex. 3 at ¶ 12.)

22

23     **1.   Legal Standard**

24     Under the Federal Arbitration Act ("FAA"), "upon

25 being satisfied that the making of the agreement for

26

27          [6] Plaintiff does not object to the authenticity or

28 accuracy of this document either.

arbitration . . . is not in issue the court shall make an
order directing the parties to proceed to arbitration in
accordance with the terms of the agreement."  9 U.S.C. §
4.  The district court must determine (1) whether a
valid, enforceable arbitration agreement exists and (2)
whether the claims asserted in the complaint are within
the scope of the arbitration agreement.  <u>Id.</u>; <u>Howard
Elec. & Mech. Co., Inc. v. Frank Briscoe Co., Inc.</u>, 754
F.2d 847, 849 (9th Cir. 1985); <u>Chiron Corp. v. Ortho
Diagnostic System, Inc.</u>, 207 F.3d 1126, 1130 (9th Cir.
2000).

     The FAA requires that "[a] written provision in any .
. . contract evidencing a transaction involving commerce
to settle by arbitration a controversy thereafter arising
out of such contract or transaction, . . . shall be
valid, irrevocable, and enforceable, save upon such
grounds as exist at law or in equity for the revocation
of any contract."  9 U.S.C. § 2.  Commerce is defined as
"commerce among the several States or with foreign
nations, or in any Territory of the United States or in
the District of Columbia, or between any such Territory
and another, or between any such Territory and any State
or foreign nation, or between the District of Columbia
and any State or Territory or foreign nation . . . ." 9
U.S.C. § 1.  Through the FAA, Congress created a liberal
federal policy favoring arbitration agreements.  <u>Perry v.</u>

1 | <u>Thomas</u>, 482 U.S. 483, 489 (1987) (quoting <u>Moses H. Cone</u>
2 | <u>Memor'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24
3 | (1983)).

4

5

6 | "[A]ny doubts concerning the scope of arbitrable
7 | issues should be resolved in favor of arbitration. . . ."
8 | <u>Moses</u>, 460 U.S. at 24-25.  "The standard for
9 | demonstrating arbitrability is not high.. . . Such
10 | [arbitration] agreements are to be rigorously enforced."
11 | <u>Simula, Inc. v. Autoliv, Inc.</u>, 175 F.3d 716, 719 (9th
12 | Cir. 1999) (citations omitted).

13

14 | The FAA's enactment "was motivated, first and
15 | foremost, by a congressional desire to enforce agreements
16 | into which parties had entered."  <u>Volt Info. Sciences,</u>
17 | <u>Inc. v. Board of Tr. of Leland Stanford Junior Univ.</u>, 489
18 | U.S. 468, 478 (1989).  "[T]he FAA does not require
19 | parties to arbitrate when they have not agreed to do so .
20 | . . . It simply requires courts to enforce privately
21 | negotiated agreements to arbitrate, like other contracts,
22 | in accordance with their terms."  <u>Id.</u>

23

24 | **2.  Discussion**
25 | Defendant argues the arbitration provisions at issue
26 | here are valid, enforceable, and encompass this dispute.
27 | (<u>See</u> Mot. at 6-7.)  Plaintiff seeks to avoid arbitration

28

14

1  on the basis that the arbitration clause is

2  unconscionable.

3

4      As an initial matter, the Court must address the

5  dispute between the parties as to what law applies here;

6  Plaintiff argues California law applies, whereas

7  Defendants argue Arizona law applies.

8

9          **a)   Choice of Law**

10     The parties agree California choice of law analysis

11  should govern the enforcement of the choice of law

12  provision.  (<u>See</u> Opp'n at 2; Reply at 2, n.1.; <u>see also</u>

13  <u>Orr v. Bank of Am.</u>, 285 F.3d 764, 772 n.4 (9th Cir. 2002)

14  (federal court sitting in diversity applies the forum

15  state's choice of law rules).)  California uses the test

16  set forth in <u>Nedlloyd Lines B.V. v. Superior Court</u> to

17  determine whether to enforce a choice of law provision.

18  3 Cal. 4th 459 (1992).  This test draws heavily on

19  section 187 of the Restatement Second of Conflict of Laws

20  ("Restatement").  <u>Id.</u> at 464-66.

21

22     Under <u>Nedlloyd</u>, California will apply the law

23  indicated by the choice of law provision where:

24  "(1) the chosen state has a substantial relationship to

25  the parties or their transaction," or where "(2) there is

26  any other reasonable basis for the parties' choice of

27  law."  <u>Id.</u> at 466.  "If neither of these tests is met,

28

1  that is the end of the inquiry, and the court need not

2  enforce the parties' choice of law."   Id.

3

4      Where either test is met, the court proceeds to the

5  second step and "determine[s] whether the chosen state's

6  law is contrary to a fundamental policy of California."

7  Id. at 466.  Where "there is a fundamental conflict with

8  California law," the court proceeds to the third step and

9  "determine[s] whether California has a materially greater

10  interest than the chosen state in the determination of

11  the particular issue.  If California has a materially

12  greater interest than the chosen state, the choice of law

13  shall not be enforced, for the obvious reason that in

14  such circumstance we will decline to enforce a law

15  contrary to this state's fundamental policy."   Id. at 466

16  (internal citations and quotations omitted).

17

18          **1.   Substantial Relationship**

19      Applying the Nedlloyd test here, the court must first

20  determine "whether the chosen state has a substantial

21  relationship to the parties or their transaction . . . ."

22  Nedlloyd, 3 Cal. 4th at 466.  This requirement is easily

23  satisfied: the corporate Defendants are incorporated in

24  Arizona and the individual Defendants are domiciled in

25  Arizona; thus there is a substantial relationship with

26  Arizona.  See Nedlloyd, 3 Cal. 4th at 467.

27

28

## 2.  Fundamental Policy

As a substantial relationship exists, the court next "determine[s] whether the chosen state's law is contrary to a *fundamental* policy of California" or that of a third state.  <u>Nedlloyd</u>, 3 Cal. 4th at 466, 467 n.5.  Where enforcement of the choice of law provision would run counter to a fundamental policy of California or a third state, then the court must refuse to enforce the choice of law provision if it finds that "California has a 'materially greater interest than the chosen state in the determination of a particular issue . . . .'"  <u>Id.</u> at 466.

There is no bright-line definition of a "fundamental policy."  Restatement § 187 comment g.  A fundamental policy must be "substantive," and "may be embodied in a statute which makes one or more kinds of contracts illegal or which is designed to protect a person against the oppressive use of superior bargaining power."  <u>Id.</u>

Here, Plaintiff argues enforcing Arizona law would frustrate California's strong public policy to "protect consumers against unfair and deceptive business practices."  (<u>See</u> Opp'n at 2 (quoting <u>Doe 1 v. AOL LLC</u>, 552 F.3d 1077, 1083-84 (9th Cir. 2009).)  Plaintiff provides the Court with significant authority to show California's fundamental policy of protecting consumers,

especially in the class action context.  (See Opp'n at 2-
3.)  Plaintiff, however, does not meet her burden of
showing California's public policy would be frustrated by
applying Arizona law in this case.  Nedlloyd, 3 Cal. 4th
at 468.  Arizona may have the same public policy interest
as California; Plaintiff does not show Arizona law is
contrary to or deficient with respect to protecting this
California public policy.

    Accordingly, as Plaintiff has not shown California's
fundamental interest would be frustrated by applying
Arizona law here, the Court does not reach the last step
of the analysis, which would otherwise require
examination of whether or not California had a materially
greater interest than Arizona in applying its own law to
this case.  Id. at 466.  Arizona law applies here.

        **b)   Unconscionability**

    Plaintiff argues the arbitration provisions in
Defendants' contracts are unconscionable.[7]  Under Arizona
law, "substantive unconscionability, whether alone or in
combination with procedural unconscionability, is
sufficient to render a contract unconscionable and, thus,

---

    [7] As Defendants point out in their Reply, Plaintiff
does not dispute that her claims are governed by the
arbitration provisions; rather, Plaintiff argues the
provisions cannot apply because they are unconscionable.
(See Reply at 1.)

1  unenforceable."  Batory v. Sears, Roebuck and Co., 124 F.

2  App'x 530, 532-33 (9th Cir. 2005).

3

4      Plaintiff argues Defendants' contracts are

5  unconscionable procedurally, as they are unenforceable

6  contracts of adhesion.[8]  "An adhesion contract is

7  typically a standardized form offered to consumers of

8  goods and services on essentially a take it or leave it

9  basis without affording the customer a realistic

10  opportunity to bargain and under such conditions that the

11  consumer cannot obtain the desired product or services

12  except by acquiescing in the form contract."  Broemmer v.

13  Abortion Serv. of Phoeniz, LTD, 840 P.2d 1013, 1015

14  (Ariz. 1992) (internal quotations and citations omitted).

15

16      Here, Defendants' contracts containing the

17  arbitration provision are contracts of adhesion: the

18  documents are pre-printed and available online; there is

19  no opportunity to "opt out" or negotiate the terms; and,

20  Plaintiff had no meaningful choice to obtain Defendants'

21  products through a reasonable alternative, without

22  assenting to Defendants' terms.  Although these are

23  adhesion contracts, this alone does not render them

24  _____

25      [8] Unlike California law, Arizona law differentiates
    claims that a contract is one of adhesion from claims of
26  procedural unconscionability.  Under Arizona law, to be
    rendered unenforceable, the adhesion contract must
27  contain terms contrary to the reasonable expectations of
    the parties or be unconscionable.  Batory, 124 F. App'x
28  at 532.

1  unenforceable; the terms also must be contrary to the

2  parties' reasonable expectations or be unconscionable.

3  Broemmer, 840 P.2d at 1016; Batory, 124 F. App'x at 532.

4

5      Plaintiff argues the arbitration terms are

6  unconscionable because they "require Plaintiff to bear

7  the burden of all attorneys' fees and costs for both

8  parties" and because they constituted an unfair surprise,

9  as they were "not clearly identified under a separate

10 heading." (Opp'n at 4, 7.) "Substantive

11 unconscionability requires an examination of the actual

12 terms of the contract and the relative fairness of the

13 obligations assumed by each party. Indicati[ons] of

14 substantive unconscionability are contract terms so one-

15 sided as to oppress or unfairly surprise an innocent

16 party, an overall imbalance in the obligations and rights

17 imposed by the bargain, and significant cost-price

18 disparity." Batory v. Sears, Roebuck & Co. ("Batory

19 II"), 456 F. Supp. 2d 1137, 1140 (D. Ariz. 2006).

20

21     Turning first to Plaintiff's contentions regarding

22 the contract's attorneys' fees clause, attorneys' fees

23 provisions in the "Associate Application and Agreement

24 Terms and Conditions" and "Conference Ticket Purchase

25 Terms and Conditions" are substantially similar. The

26 former reads as follows:

27

28

1      "10.   Applicant agrees to pay any and all costs,

2      including without limitation reasonable attorneys'

3      fees, incurred by Company as a result of any

4      violation of this Application and Agreement or any

5      Rule, Policy or Procedure of the Company or any other

6      dispute between Company and Applicant.   In the event

7      any portion of this Application and Agreement at any

8      time, for any reason, is determined to be void or

9      superseded, the provision of this paragraph shall

10     survive."

11 (See Boisnier Decl., Ex. 1 at ¶ 10.)   The Conference

12 Ticket provision reads as follows:

13     "13. ATTORNEYS' FEES; COSTS.   Attendee agrees to pay

14     any and all costs, including without limitation

15     reasonable attorneys' fees, incurred by Company as a

16     result of any violation of these Terms and Conditions

17     by Attendee or any other dispute between Company and

18     Attendee.   In the event any portion of these Terms

19     and Conditions at any time, for any reason, are

20     determined to be void or superseded, the remaining

21     portions of the foregoing Terms and Conditions and

22     the provisions of this paragraph shall survive."

23 (See Boisnier Decl., Ex. 3 at ¶ 13.)

24

25    Here, the attorneys' fees provisions clearly show "an

26 overall imbalance in the obligations and rights imposed

27 by the bargain" and "significant cost-price disparity."

28

1   As Plaintiff points out, less offensive provisions - so

2   called "loser pay" provisions - have been found

3   unconscionable.  See Porkorny v. Quixtar, Inc., 2008 WL

4   850358, at *19 (N.D. Cal. 2008); Veliz v. Cintas Corp.,

5   2004 WL 2452851, at *22 (N.D. Cal. 2004).  The attorneys'

6   fees provisions in Defendants' contracts, whereby

7   Plaintiff must always pay Defendants' attorneys' fees,

8   even if Plaintiff ultimately prevails, clearly constitute

9   substantive unconscionability.  Batory II, 456 F. Supp.

10  2d at 1140.

11

12      Lastly, the Court does not find persuasive

13  Plaintiff's argument that the arbitration clause

14  constituted unfair surprise because it lacked a separate

15  heading.  Defendants cite several persuasive case to show

16  courts across the country have enforced so-called

17  "clicking agreements" that contain arbitration clauses.

18  (See Mot. at 7 (citing Hauenstein v. Softwrap, LTD, 2007

19  WL 2404624, at *3 (W.D. Wash. 2007); Feldman v. Google,

20  Inc., 2007 WL 966011, at *5-8 (E.D. Pa. 2007); DeJohn v.

21  The TV Corp. Int'l, 245 F. Supp. 2d 913, 916 (N.D. Ill.

22  2003)).)  Here, Plaintiff had notice of the terms within

23  the agreement and clicked in a box that she agreed to the

24  terms; the onus was on Plaintiff to read the terms

25  provided to her by Defendants and to indicate if she did

26  not assent to the terms.

27

28

1    Plaintiff states she does not recall seeing the
2    arbitration provision in the contracts; however,
3    Plaintiff does not dispute the authenticity or accuracy
4    of the contracts Defendants provided to the Court that
5    contain such provisions to which Plaintiff assented on
6    August 15, 2006 and September 5, 2006.  Thus, despite
7    Plaintiff's protestations that she lacks a clear memory
8    of reading the arbitration provision, Plaintiff had
9    notice and assented to it.

10

11    Accordingly, the Court does not find the entire
12   arbitration clause unconscionable; rather, only the
13   attorneys' fees provision.

14

15                    **3.   Remedy**

16    Upon finding a clause within a contract
17   unconscionable, the Court may (1) refuse to enforce the
18   contract; (2) enforce the remainder of the contract
19   without the unconscionable clause; or (3) limit the
20   application of the unconscionable clause as to avoid any
21   unconscionable result.  See Ariz. Rev. Stat. Ann. § 47-
22   2302(A).  In the interest of justice, the Court severs
23   the substantively unconscionable attorneys' fees
24   provision and enforces the remainder of the contract,
25   including the arbitration provision.

26

27

28

1    Plaintiff argues the attorneys' fees provisions are
2  not severable, based on the language in the provisions
3  that they apply even if any other provision in the
4  contracts is voided.  (See Opp'n at 6 n.3.)  This
5  argument is not availing; the Court severs these
6  provisions, so they are no longer in effect.  By doing
7  so, contrary to Plaintiff's argument, the Court does not
8  re-write the contract for the parties; rather, it severs
9  only the unlawful part and enforces the remainder.  See
10  Olliver/Pilcher Ins., Inc. v. Daniels, 715 P.2d 1218,
11  1220-21 (Ariz. 1986).
12
13  **C.  Motion to Dismiss For Failure to State a Claim**
14    Defendants move the Court to dismiss Plaintiff's
15  Unfair Competition Law ("UCL") claims for failure to
16  state a claim and failure to plead with particularity
17  under Federal Rule of Civil Procedure Rule 9(b) ("Rule
18  9(b)").
19
20    **1.  Legal Standard**
21    Under Rule 12(b)(6), a party may bring a motion to
22  dismiss for failure to state a claim upon which relief
23  can be granted.  As a general matter, the Federal Rules
24  require only that a plaintiff provide "'a short and plain
25  statement of the claim' that will give the defendant fair
26  notice of what the plaintiff's claim is and the grounds
27  upon which it rests."  Bell Atlantic Corp. v. Twombly,
28

1  550 U.S. 544, 127 S. Ct. 1955, 1964 (2007) (quoting Fed.

2  R. Civ. P. 8(a)(2)).  In addition, the Court must accept

3  all material allegations in the complaint -- as well as

4  any reasonable inferences to be drawn from them -- as

5  true.  See Doe v. United States, 419 F.3d 1058, 1062 (9th

6  Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411

7  F.3d 1092, 1096 (9th Cir. 2005).

8

9       "While a complaint attacked by a Rule 12(b)(6)

10 motion to dismiss does not need detailed factual

11 allegations, a plaintiff's obligation to provide the

12 'grounds' of his 'entitlement to relief' requires more

13 than labels and conclusions, and a formulaic recitation

14 of the elements of a cause of action will not do."  Bell

15 Atlantic, 127 S. Ct. at 1964-65 (citations omitted).

16 Rather, the allegations in the complaint "must be enough

17 to raise a right to relief above the speculative level."

18 Id. at 1965.

19

20       Although the scope of review is limited to the

21 contents of the complaint, the Court may also consider

22 exhibits submitted with the complaint, Hal Roach Studios,

23 Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19

24 (9th Cir. 1990), and "take judicial notice of matters of

25 public record outside the pleadings," Mir v. Little Co.

26 of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988).

27

28

### 2.   Discussion

Plaintiff alleges Defendants intentionally induced prospective consumers through knowingly deceptive, misleading, and false business practices, to the detriment of the prospective consumers.  (See FAC ¶¶ 2, 3, 7, 19, 26-28, 32-34, 79-80, 83, 86.)  Plaintiff brings this claim under California law.  As the Court has concluded Arizona law applies here, the Court grants Defendants' Motion and dismisses Plaintiff's California UCL claims, with leave to amend to bring these claims under Arizona law.

### D.   Motion to Dismiss or Strike Injunctive Relief and Irrelevant Allegations

Defendants move the Court to dismiss, or strike, Plaintiff's claim for injunctive relief and strike portions of Plaintiff's FAC that describe an Arizona Attorney General investigation.  (See Mot. at 16-19.)

### 1.   Injunctive Relief

Defendant argues Plaintiff does not have standing to seek injunctive relief because she cannot show she is threatened by a likely repetition of Defendant's violation of UCL.  As the Court has granted Defendants' Motion to Dismiss Plaintiff's UCL claims, Plaintiff cannot obtain the remedy sought for the alleged California UCL violations.  Accordingly, Defendants'

1  Motion to Dismiss Plaintiff's prayer for injunctive

2  relief is denied as moot.

3

4      **2.    Discussion of Arizona Attorney General**

5          **Investigation**

6      Defendant moves the Court to strike the portions of

7  Plaintiff's FAC that discuss an Arizona Attorney General

8  investigation into Defendants' alleged scheme.  Under

9  Federal Rule of Civil Procedure 12(f), a court "may

10 strike from a pleading an insufficient defense or any

11 redundant, immaterial, impertinent, or scandalous

12 matter."  Fed. R. Civ. P. 12(f).  "[T]he function of a

13 12(f) motion to strike is to avoid the expenditure of

14 time and money that must arise from litigating spurious

15 issues by dispensing with those issues prior to trial."

16 Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885

17 (9th Cir. 1983).

18

19     Defendant argues "what may have happened as a result

20 of an earlier investigation conducted by the Arizona

21 Attorney General's office can have no bearing on whether

22 Defendants engaged in unfair business practices in

23 California."  (See Mot. at 18.)  The Court is not

24 persuaded by this argument; these allegations are

25 relevant to Plaintiff's claims.  See Fed. R. Evid. 401.

26 Furthermore, Defendants show no prejudice to them caused

27

28

by these allegations.  Accordingly, the Court DENIES
Defendants' Motion to strike these allegations.

### III. CONCLUSION

For the foregoing reasons, the Court reaches the
following conclusions:

1.  The Court GRANTS Defendants' Motion to Dismiss
    for Lack of Personal Jurisdiction, as to
    Defendants Beyond Freedom Publishing, LLC,
    Liberty League Holdings, LLC, Brent Payne, and
    Shane Krider, with leave to amend;

2.  The Court GRANTS Defendants' Motion to Compel
    Arbitration;

3.  The Court GRANTS Defendants' Motion to Dismiss
    Plaintiff's Unfair Competition Law Claim, with
    leave to amend; and

4.  The Court DENIES AS MOOT Defendants' Motion to
    Dismiss Plaintiff's prayer for injunctive
    relief, and DENIES Defendants' Motion to Strike
    Portions of Plaintiff's FAC.

1      Plaintiff must file a second amended Complaint no
2  later than May 26, 2009.  The parties over which the
3  Court has personal jurisdiction are compelled to
4  arbitrate Plaintiff's claims.

5

6
   Dated: April 14, 2009      _____
7                              VIRGINIA A. PHILLIPS
                              United States District Judge
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28